STATE OF NORTH CAROLINA v. WILLIE THOMAS BUTLER,
A/K/A TOP CAT

No. 87

(Filed 6 June 1978)

**Criminal Law § 75.11— in-custody statement—specific waiver of counsel**
    The trial court erred in finding that, since defendant had been fully informed of and understood his right to the presence of counsel at his in-custody

interrogation and did not request a lawyer, his act in making an in-custody statement amounted to a waiver of counsel, and the court erred in the admission of defendant's statement where the evidence on voir dire failed to show that defendant specifically made a waiver of counsel after the *Miranda* warnings had been given him.

DEFENDANT appeals from judgment of *Grist, J.*, 31 October 1977 Session, WAYNE Superior Court.

Defendant was tried on separate bills of indictment charging (1) felonious assault, (2) kidnapping and (3) armed robbery, the State alleging that all three crimes were committed on 28 December 1976 in Wayne County.

The State's evidence tends to show that Ralph Burlingame was closing a Kayo station about 11 p.m. on 28 December 1976 when two black males came to the door to buy beer. They left when told that the station was closed. Burlingame completed his inventory for the day, locked up and started to his car parked nearby. The same two black males with pistols drawn then accosted Burlingame and forced him to drive them away in his own car. Defendant told Burlingame "it was a holdup" and he was going to kill him when the ride ended because he was a white boy. In a few seconds Burlingame opened the door and jumped from the moving car. As he jumped he was shot in the back, the bullet penetrating his spinal cord and leaving his legs paralyzed. He "played dead" as he lay in the street while the robbers stopped the car 200 feet away, returned, took his wallet containing $30, shot him twice more and ran away. Shortly thereafter police officers arrived and took him to the hospital.

Within a week Burlingame positively identified photographs of defendant Butler and Elmer Lee from a twelve-photograph display. He testified in court that he was certain defendant was the man who shot him.

Defendant fled the State and was arrested in New York City on 3 May 1977 by FBI Agent David C. Martinez. Defendant was given the *Miranda* warnings, refused to sign a waiver of rights but said he understood his rights and would talk with the arresting officers. He made an incriminating statement which was admitted into evidence over objection. Defendant contended at trial, and now contends, that he never waived counsel at the in-custody interrogation by Martinez.

Defendant testified as a witness in his own behalf. He denied that he was a participant in the robbery of Ralph Burlingame and denied ever having seen Burlingame prior to a pretrial hearing held three weeks before his trial. He further denied making an admission to FBI Agent Martinez and denied that he waived any of his rights. He stated he did not know Elmer Lee and was not with him on the night of 28 December 1976 when the kidnapping and armed robbery allegedly occurred.

Defendant was convicted as charged in all three cases and given a life sentence for kidnapping, a life sentence for armed robbery and five years for the felonious assault, all sentences to run concurrently. He appealed the kidnapping and armed robbery cases to the Supreme Court, and we allowed motion to bypass the Court of Appeals in the felonious assault case to the end that all three convictions receive initial appellate review in this Court. Defendant assigns errors discussed in the opinion.

*Rufus L. Edmisten, Attorney General, by Thomas F. Moffitt, Associate Attorney, for the State of North Carolina.*

*Michael A. Ellis and R. Gene Braswell, attorneys for defendant appellant.*

HUSKINS, Justice.

Defendant assigns as error the admission of his inculpatory statement to FBI Agent David C. Martinez, made while in custody and without benefit of counsel. He contends the incriminating statement is inadmissible because he had not waived his constitutional right to the presence and assistance of counsel, relying on *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), as interpreted and applied by this Court in *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971). This constitutes his first assignment of error and requires examination of the proceedings on voir dire and the findings of the court based thereon.

FBI Agent Martinez testified on voir dire that he arrested defendant at 1225 Sheraton Avenue in Brooklyn, New York, on a fugitive warrant on 3 May 1977. He was immediately and fully advised of his constitutional rights and transported to the New Rochelle office where he was again advised of his rights. Defendant, who had an eleventh grade education, then took the "Advice

---

State v. Butler

---

of Rights" form and read it himself. He was asked if he understood his rights and he replied that he did. As to signing the "Waiver of Rights" printed at the bottom of the form, defendant said "he didn't want to sign this form and that he didn't want to sign anything." He was told that it was not mandatory that he talk and that he didn't have to sign the form but that "we would like for him to talk to us." Defendant replied: "I will talk to you but I am not signing any form." FBI Agent Martinez then made a notation on the form that defendant refused to sign it.

Since defendant had stated he would talk to Officer Martinez, he was then asked "if he had participated in the armed robbery and he stated that he was there but that he did not actually participate as such in the armed robbery. We asked him to explain a little further and he stated that he and an accomplice had been drinking heavily that day and were walking around and decided to rob a gas station. They came up to a gas station where the attendant was locking up for the night and walked inside the station. He stated that the fellow with him pulled out a gun and told the gas station attendant to get in his car. He then said that the gas station attendant tried to run away and that his friend shot the attendant. At this point Mr. Butler stated that he ran away from them and didn't look back. He stated that he ran to a bus station where he caught a bus to Virginia and that in Virginia he caught another bus to New York where he had been until he was apprehended that morning. We asked him if the other person was someone by the name of Elmer Lee and we had had communications from our Charlotte office saying that Elmer Lee had also been involved. Butler said that Lee was there."

On cross-examination Agent Martinez said: "He did not say anything when I advised him of his right to have an attorney and he just sat there and listened. I repeatedly asked him if he understood his rights and he said that he did. He stated that he would not sign the paper. . . ."

Upon further interrogation by the presiding judge, Agent Martinez said: "He never told us that he did not want the lawyer present. He never told us he did want a lawyer present. . . . He said 'I won't sign the form. I will talk to you but I won't sign the form.' . . . What made me believe that he did not want a lawyer present at that time was the fact that he was relating the story

concerning the charges against him at that point. If he had wanted an attorney present with him, he wouldn't have said anything."

Based upon the evidence of Agent Martinez—defendant offered none on voir dire—the court found, among other things, that defendant's statement to Agent Martinez was made freely and voluntarily after having been advised of his rights as required by *Miranda*, including his right to an attorney, and that defendant understood his rights and "effectively waived his rights, including the right to have an attorney present during the questioning by his indication that he was willing to answer questions, having read the rights form together with the waiver of rights; that the statement . . . was voluntarily made at a time when the defendant understood his rights. . . ." Upon those findings the court concluded as a matter of law that defendant had knowingly waived his right to counsel and that his statement was competent evidence in the trial of the action. Defendant's first exception and assignment of error is based on this ruling. We hold that the assignment is sound and must be sustained.

Admission of defendant's inculpatory statement to Agent Martinez was erroneous because the evidence on voir dire is insufficient to support the finding that defendant waived his right to counsel. He refused to waive it in writing and the evidence on voir dire fails to show a specific oral waiver knowingly made.

In *Miranda v. Arizona*, supra, the United States Supreme Court said:

"An individual need not make a pre-interrogation request for a lawyer. While such request affirmatively secures his right to have one, his failure to ask for a lawyer does not constitute a waiver. No effective waiver of the right to counsel during interrogation can be recognized unless *specifically* made after the warnings we here delineate have been given. . . . [Emphasis added.]

\*    \*    \*    \*

An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed simply from the silence of the

accused after warnings are given or simply from the fact
that a confession was in fact eventually obtained. . . .

\*    \*    \*    \*

> After such warnings have been given, and such oppor-
> tunity afforded him, the individual may knowingly and in-
> telligently waive these rights and agree to answer questions
> or make a statement. But unless and until such warnings and
> waiver are demonstrated by the prosecution at trial, no
> evidence obtained as a result of interrogation can be used
> against him."

384 U.S. at 470, 475, 479, 16 L.Ed. 2d at 721, 724, 726, 86 S.Ct. at
1626, 1628, 1630.

In *Carnley v. Cochran*, 369 U.S. 506, 516, 8 L.Ed. 2d 70, 77, 82
S.Ct. 884, 890 (1962), the United States Supreme Court said:

> "Presuming waiver from a silent record is impermissi-
> ble. The record must show, or there must be an allegation
> and evidence which show, that an accused was offered
> counsel but intelligently and understandingly rejected the of-
> fer. Anything less is not waiver."

Measured by *Miranda* standards it is apparent that the find-
ings of fact are not supported by the voir dire testimony of Agent
Martinez. Failure to request counsel is not synonymous with
waiver. Nor is silence. *Compare State v. Siler*, 292 N.C. 543, 234
S.E. 2d 733 (1977). The trial judge erred in holding that since
defendant had been fully informed and understood his right to the
presence of counsel at the in-custody interrogation and did not re-
quest a lawyer, his act in making the statement amounted to a
waiver of counsel. The holding in *Miranda* as interpreted and ap-
plied by this Court in *Blackmon* provides in plain language that
waiver of the right to counsel during interrogation will not be
recognized unless such waiver is "specifically made" after the
*Miranda* warnings have been given.

Although there is other evidence amply sufficient to support
a conviction in this case, the statement made by defendant to
Agent Martinez placed him at the scene of the crime in company
with Elmer Lee with whom defendant had agreed to rob a gas
station and describes the attempted robbery. This statement

alone would have been sufficient to convict defendant of armed robbery at least. There is a reasonable possibility that defendant's statement might have contributed to his conviction. Therefore, we cannot say beyond a reasonable doubt that the inculpatory statement did not materially affect the result of the trial to defendant's prejudice or that it was harmless error. *See Chapman v. California*, 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967); *Fahy v. Connecticut*, 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963); *State v. Taylor*, 280 N.C. 273, 185 S.E. 2d 677 (1972); *State v. Blackmon*, 280 N.C. 42, 185 S.E. 2d 123 (1971). The State argues for harmless error, relying on *State v. Hudson*, 281 N.C. 100, 187 S.E. 2d 756 (1972), *cert. den.* 414 U.S. 1160 (1974), but that case if factually distinguishable. Error in the admission of defendant's incriminating statement to Agent Martinez requires a new trial.

Defendant's remaining assignment alleging error in allowing the district attorney to ask leading questions is without merit and requires no discussion.

For the reasons stated defendant is entitled to a new trial in each case and it is so ordered.

New trial.